(15 Misc. Rep. 418.)

RIDENOUR v. BOARD OF EDUCATION OF CITY OF BROOKLYN.

(Supreme Court, Special Term, Kings County. January, 1896.)

1. SCHOOL TEACHERS—DISCHARGE—CIVIL SERVICE LAWS.
    A teacher of a public school in the city of Brooklyn is an employé, not of the city, but of the board of education, which is a corporation distinct from the city, and therefore is not protected by Laws 1892, c. 577, providing that no veteran of the Civil War, "holding a position by appointment in any city or county," shall be removed therefrom except for cause shown after a hearing.

2. SAME—RIGHT TO TRIAL UNDER SCHOOL LAW.
    Laws 1894, c. 556 (Consolidated School Law) tit. 7, art. 6, § 47, providing that no teacher shall be dismissed in the course of a term of employment except for reasons which, if appealed to the superintendent of public instruction, should be held to be sufficient cause for such dismissal, does not give the teacher the right to a trial.

Action by William B. Ridenour against the board of education of the city of Brooklyn to enjoin defendant from dismissing plaintiff from his position as teacher in the public school. Plaintiff moves to continue a temporary injunction theretofore granted. Denied.

M. S. Towns, for plaintiff.

A. G. McDonald and Alfred C. Mudge, for defendant.

GAYNOR, J. The plaintiff seeks to enjoin the defendant, the board of education of the city of Brooklyn, from summarily dismissing him from his place as teacher in the public schools of the city of Brooklyn, claiming that he may not be dismissed except for cause found after a trial by the board upon charges. He makes this contention upon two stated grounds, viz: First, that he is an honorably discharged soldier of the war of the Rebellion; and, second, that the general school laws of the state entitle all teachers in the common schools to the protection of such a trial.

1. There is a general statute that no honorably discharged soldier or sailor of the war of the Rebellion, "holding a position by appointment in any city or county," and "receiving a salary from such city

or county," shall be removed therefrom "except for cause shown after a hearing had." Laws 1892, c. 577. This statute expressly excepts positions having a definite term fixed by law, and relates only to positions over which the power of removal may be exercised at pleasure. It also needs to be observed that it relates, in terms, only to positions in cities and counties. It does not cover appointees under the state government, nor in towns, villages, or school districts. The plaintiff is concededly not holding a county position. If, therefore, he is not holding a position by appointment in the city of Brooklyn, viz. under the city government, and receiving a salary from the city, he does not come under the protection of the veteran statute. He is an employé of the board of education. It is not a part of the corporation of the city of Brooklyn, but is itself a local school corporation, like every board of school-district trustees throughout the state (General Corporation Law, § 3), and is, like every such board, an integral part of the general school system of the state. It is a state and not a city agency, doing state and not city work and functions. Education is not city, village, county, or town business. It is a matter belonging to the state government. From its comprehensive foundation by chapter 75 of the Laws of 1795, down to the recent codification of our school laws ("Consolidated School Law," Laws 1894, c. 556), our state system of education has remained a consistent whole. The present board of education of the city of Brooklyn is as distinctly a part of that whole as is any school district in the state. It is the lineal successor to the powers and duties formerly performed by the trustees of the several school districts of Kings county.

The city of Brooklyn was incorporated in 1834. Laws 1834, c. 92. Its first charter is silent concerning public education. It conferred no power in respect of it upon any board or officer of the city. It left all the school districts of the locality as they had previously existed and been governed, viz. by the district trustees and the town commissioners. Rev. St. 1830, pt. 1, c. 15. The next year the legislature made it the duty of the common council to appoint the trustees of the several school districts, and also the commissioners, instead of their being elected as formerly. Laws 1835, c. 129, § 15. The legislature did not thereby make them city officers. It often happens that city officers are required by a statute to appoint individuals to do specified state duties; but that does not make such appointees city officers, or make the city liable for their acts. Ham v. Mayor, etc., 70 N. Y. 459; New York & B. Saw Mill & Lumber Co. v. City of Brooklyn, 71 N. Y. 580; Lorillard v. Town of Monroe, 11 N. Y. 392. By chapter 63 of the Laws of 1843 the common council was required to appoint two or more persons from each school district, to constitute a board of education of the city of Brooklyn, and this was its creation. By the said statute the said board was given the control and direction of the common schools of Brooklyn, and all of the powers (under the general state school laws) of trustees of school districts (who were thus, locally, done away with), but under and subject to rules and regulations, not inconsistent with

the said laws, which the common council was required to make; and the members of the common council were, ex officio, made school commissioners. The treasurer of the city was, ex officio, made custodian of all school moneys, but to the board of education was given the spending of the same. By chapter 143 of the Laws of 1850 the whole city was made one school district for the purposes of taxation, the building and repairing of schools, and the support of the schools; but the board of education was directed to divide the city into districts for the purpose of regulating attendance. Reference to the duties of school commissioners prescribed by the Revised Statutes (supra) will show that this transferred to the board of education all such duties, and thus the members of the common council ceased to be school commissioners. This act also empowered the board of education to make rules for its own government, and for the government and discipline of the schools, thus taking that power from the common council. The foregoing acts (and several others which I do not need to cite) were not amendments of the charter of Brooklyn, but separate and distinct school laws. They cannot be construed as making the local school system a part of the city corporation, but manifest a contrary purpose. By the act consolidating the cities of Brooklyn and Williamsburg and the town of Bushwick, the system created by these acts was recognized, and in so many words continued. Laws 1854, c. 384, tit. 11, § 13. That is all there is in this charter of the new city upon the subject.

In the revised charter of Brooklyn, passed in 1873 (chapter 863, tit. 16), it is provided as follows: "There shall be a department of public instruction which shall be under the control of a board of education, and all provisions of law relating to the present board of education of the city of Borooklyn shall apply thereto, except so much as relates to the appointment of the members thereof." And then it makes the change that the mayor shall appoint the members with the approval of the common council. This is all that that act contains on the subject of education. It nominally creates a department of public instruction, but puts it under control of the board of education, which was and always had been a corporate entity itself, having a treasury, and capable of holding property, of contracting, and of suing and being sued, and which had always held, as it still holds, title to all of the school property within the city. Allen v. Brooklyn, 8 Blatchf. 535, Fed. Cas. No. 218. It was not brought into existence by this act, but had theretofore existed, and was to continue under the distinctively school laws which I have cited, and by one of which it was created in 1843, and also subject to the general school laws of the state.

The present charter (Laws 1888, c. 583, tit. 17) is, in the respect under consideration, a re-enactment of the charter of 1873. It also contains some of the provisions of the said school laws cited above, —among others, those making the city treasurer ex officio treasurer of the board of education, and giving the board of education the powers, and subjecting it to the duties, of trustees of school districts throughout the state. By it, also, the mayor has the sole power of

appointing the members of the board. This charter is a revision, and combination into a single act, of all local and special acts relating to the corporation of the city of Brooklyn. At its end is a clause repealing all prior local and special acts relating to the "corporation of the city of Brooklyn * * * or to the administration of the property or affairs of said corporation." This carefully limited repealing clause did not repeal the local school laws relating to the common schools in the city of Brooklyn, but left them intact. It is obvious that it was not meant to work such repeal, for the board of education and the schools are governed under them, as they have been from the beginning, and by virtue of them all of the local school property is vested in the said board, and owned by it, and not by the city.

The plaintiff being an employé of the board of education, and it not being part of the corporation of the city of Brooklyn, as I conclude from the foregoing, the veteran statute affords him no protection. Moreover, the plaintiff does not receive a salary from the city, but from the board of education; and its moneys are made up of state school moneys raised by taxation, and invested state school funds, as well as from local taxation.

2. In respect of the plaintiff's claim that the general school laws of the state entitle him to a trial, this is the only provision upon the subject, viz.:

"Nor shall any teacher be dismissed in the course of a term of employment, except for reasons which, if appealed to the superintendent of public instruction, shall be held to be sufficient cause for such dismissal." Consolidated School Law (Laws 1894, c. 556, tit. 7, art. 6, § 47).

This language does not give to the teacher the right to a trial. People v. Thompson, 94 N. Y. 451; People v. Morton, 148 N. Y. 156, 42 N. E. 538. The relation between the plaintiff and the board of education is simply the contract one of employer and employé (Consolidated School Law, tit. 7, art. 6, § 47); and for a breach of his contract of service by a dismissal without cause the board would be liable to him in an action for damages (Gillis v. Space, 63 Barb. 177; Wait v. Ray, 67 N. Y. 36). The by-laws of the board provide for "annual salaries" and "yearly salaries" for teachers (article 11), and they are part of the plaintiff's contract of employment (People v. Board of Education, 143 N. Y. p. 65, 37 N. E. 637). But, as it has recently been declared the law of this state that a hiring at a year's salary is only a hiring at will (Martin v. Insurance Co., 148 N. Y. 117, 42 N. E. 416), that would seem to be the plaintiff's case, unless the requirement of the general school law that teachers be employed for a term, read into and with the said by-laws, saves him.

The motion to continue the temporary injunction is denied.