EVERETT R. ALVIN AND ANOTHER v. A. W. JOHNSON
AND ANOTHER.
ALECK NORDQUIST, APPELLANT.[1]

February 19, 1954.

No. 36,163.

---

[1]Reported in 63 N. W. (2d) 22.

*Robert S. Parker, Louise A. Herou,* and *Larson, Loevinger, Lindquist, Freeman & Fraser,* for appellant.

*S. Bernhard Wennerberg* and *A. M. Bullis,* for respondents Alvin and Koch.

*James M. McGuire,* for respondent Johnson.

MAGNEY, COMMISSIONER.

Plaintiffs, Everett R. Alvin and Willis P. Koch, are the owners of real property, 40 feet wide, in the village of North Branch. A brick building occupies all of said property, except the south 15 feet. Defendant A. W. Johnson is the owner of property, 60 feet wide, directly to the west of that of plaintiffs, bordering lengthwise on a street. A brick building occupies this property except the south 15 feet thereof. A shed is also attached to the building. Defendant Aleck Nordquist is the owner of the property directly south of the properties of plaintiffs and Johnson. There is also a structure on this property, except the north 25 feet thereof. Plaintiffs claimed that they had acquired by prescription an easement for a roadway across the Johnson and Nordquist properties. In April 1949 Nordquist constructed a wire fence along the north and west lines of his property, thus preventing plaintiffs' use of their claimed easement. In November 1950 Johnson commenced excavating for the purpose of constructing an addition to his building. The construction of this addition would bar all ingress to and egress from the rear entrance of plaintiffs' building to the street. The plaintiffs thereupon brought this action to establish an easement in their favor in and to a roadway across the properties of defendants, to locate the position of the easement, and to enjoin defendants from obstructing the roadway and interfering with plaintiffs' use thereof. The court found that plaintiffs had acquired by prescription an easement for roadway over defendants' lands prior to 1926 and held that they were entitled to a free and un-

obstructed use thereof. Judgment was entered accordingly, and Nordquist appeals therefrom. Johnson did not appeal.

The property now owned by Nordquist was forfeited to the state of Minnesota in 1945 for nonpayment of taxes assessed against it in 1926. A certificate of forfeiture was properly recorded. In January 1946 the state sold the property to Nordquist's predecessor in title and executed to it a state tax deed.

■ The main question presented in this appeal is well stated by appellant. It is whether a valid tax deed executed by the state of Minnesota, as grantor, extinguishes and destroys an unrecorded easement across the property described in the tax deed, which easement was acquired by prescription prior to the tax assessment for which the property was forfeited to the state. Applying the question to the facts of this case, it can be stated: Did the tax deed issued by the state of Minnesota in 1945 for nonpayment of taxes assessed against the Nordquist property in 1926 extinguish and destroy the unrecorded easement for roadway which plaintiffs and their predecessors in title had acquired prior to 1925? Nordquist, of course, claims that it did and the plaintiffs that it did not.

The easement which plaintiffs acquired is an easement appurtenant, and the weight of authority is to the effect that an easement appurtenant is not extinguished by a sale and conveyance of the land subject to it for nonpayment of a tax assessed against such land. The cases cited in the footnote indicate the jurisdictions that support this view.[2] Footnote 3 lists the cases and jurisdictions

[2]Schlafly v. Baumann, 341 Mo. 755, 108 S. W. (2d) 363; Northwestern Improvement Co. v. Lowry, 104 Mont. 289, 66 P. (2d) 792, 110 A. L. R. 605; Gowen v. Swain, 90 N. H. 383, 10 A. (2d) 249; Ehren Realty Co. v. Magna Charta Bldg. & Loan Assn. 120 N. J. Eq. 136, 184 A. 203; Metropolitan L. Ins. Co. v. McGurk, 119 N. J. L. 517, 197 A. 47; Niestat v. Equitable Security Co. 138 N. J. Eq. 480, 48 A. (2d) 907; Alamogordo Improvement Co. v. Prendergast, 43 N. M. 245, 91 P. (2d) 428, 122 A. L. R. 1277; Tax Lien Co. v. Schultze, 213 N. Y. 9, 106 N. E. 751, L. R. A. 1915D, 1115, Ann. Cas. 1916C, 636; Harris v. Curtis, 139 App. Div. 393, 124 N. Y. S. 263, affirmed, 211 N. Y. 573, 105 N. E. 1085; Jackson v. Smith, 153 App. Div. 724, 138 N. Y. S. 654, affirmed, 213 N. Y. 630, 107 N. E. 1079; Blenis v. Utica Knitting Co. 73 Misc. 61, 130 N. Y. S. 740,

contra.[3] Restatement, Property, § 509(2), states:

"An easement appurtenant is not extinguished by a sale and conveyance of the land subject to it for nonpayment of a tax assessed against such land."

3 Cooley, Taxation (4 ed.) § 1494, uses this language:

"Ordinarily, a tax sale does not divest easements charged on the property sold. Thus, private easements of light, air and access of adjoining owners over the land sold are not extinguished by the tax-sale."

The latest case coming to our attention is Engel v. Catucci, 91 App. D. C. 54, 197 F. (2d) 597, decided in May 1952 by the United States Court of Appeals, District of Columbia Circuit, in which the authorities are exhaustively reviewed. The court followed the majority rule and held that a tax deed after sale for District of Columbia taxes to a lot over which lay an easement of passageway created by deed and appurtenant to another lot did not extinguish the easement. In the District of Columbia, as stated in the opinion, a tax deed extinguishes all liens, encumbrances, and equities in

affirmed, 210 N. Y. 561, 104 N. E. 1127; Poetzsch v. Mayer, 15 Misc. 422, 189 N. Y. S. 695; Halpin v. Poushter, 59 N. Y. S. (2d) 338; Ross v. Franko, 139 Ohio St. 395,,40 N. E. (2d) 664; Gulf Refining Co. v. Jenkins, 194 Okl. 331, 151 P. (2d) 419; Stanolind Pipeline Co. v. Jenkins, 194 Okl. 334, 151 P. (2d) 422; Crawford v. Senosky, 128 Ore. 229, 274 P. 306; Tide Water Pipe Co. v. Bell, 280 Pa. 104, 124 A. 351, 40 A. L. R. 1516; Hayes v. Gibbs, 110 Utah 54, 169 P. (2d) 781, 168 A. L. R. 513; Union Falls Power Co. v. Marinette County, 238 Wis. 134, 298 N. W. 598, 134 A. L. R. 958; Doherty v. Rice, 240 Wis. 389, 3 N. W. (2d) 734; Engel v. Catucci, 91 App. D. C. 54, 197 F. (2d) 597; 3 Cooley, Taxation (4 ed.) §§ 1154, 1494; 22 Minn. L. Rev. 578.

[3]Wolfson v. Heins, 149 Fla. 499, 6 So. (2d) 858; Nedderman v. City of Des Moines, 221 Iowa 1352, 268 N. W. 36; Magnolia Petroleum Co. v. Moyle, 162 Kan. 133, 175 P. (2d) 133; City of Jackson v. Ashley, 189 Miss. 818, 199 So. 91; Hanson v. Carr, 66 Wash. 81, 118 P. 927; Tamblin v. Crowley, 99 Wash. 133, 168 P. 982; Messett v. Cowell, 194 Wash. 646, 79 P. (2d) 337; Harmon v. Gould, 1 Wash. (2d) 1, 94 P. (2d) 749; Re Hunt, 34 Ont. L. Rep. 256, 24 D. L. R. 590. Annotation, 168 A. L. R. 529, covers the authorities fully.

and upon the parcel conveyed. The court said (91 App. D. C. 56, 197 F. [2d] 599):

"* * * But an easement is an interest in land which has peculiar characteristics of its own, being neither an estate nor a lien, an encumbrance nor an equity, in the ordinary sense of those terms. An easement appurtenant to another lot, when created by conveyance, attaches to the possession of that other lot and 'follows it into whosesoever hands it may come.' "

Citing Restatement, Property, § 487, *comment a.*

The court briefly stated the reasons given by the authorities for favoring the majority rule in language which we will quote since it covers the situation and would be difficult to improve upon. It said (91 App. D. C. 56, 197 F. [2d] 599):

"The reasoning of the authorities holding that the easement survives the tax deed is, briefly, that when an easement is appurtenant to a dominant estate it attaches to that estate, being carved out of the servient estate; that the value of the dominant estate is increased by the existence of the easement and in effect thus includes the value of the easement; that, when a tax is paid upon the value of the dominant estate determined in this manner, a tax has in effect been paid upon the easement; that the tax upon the servient estate is upon a value lessened because of the existence of the easement; that a sale for nonpayment of that tax ought to be a sale of the lessened estate; that 'account can be taken of an easement appurtenant without increasing the complication of the tax process'; and that therefore a tax sale of a servient estate should pass title to that estate subject to the easement."

The minority view is that the assessment for taxes is made against the land as an entirety without regard to the various divided interests therein and that, therefore, the purchaser of land at a tax sale receives a title from the state which is paramount against all other claims, titles, and equities and which is free from all easements and burdens thereon. The question has also been fully annotated in Annotation, 168 A. L. R. 529.

G. S. 1923, § 1992, the statute in effect when the assessment was made, reads:

"All property shall be assessed at its true and full value in money. * * * but he [the assessor] shall value each article or description of property by itself, and at such sum or price as he believes the same to be fairly worth in money."

How this shall be done is set out in G. S. 1923, § 1990, which imposes on the assessor the duty to "actually view, when practicable, and determine the true and full value of each tract or lot of real property listed for taxation." In determining what the value of the property to be assessed is, it is the duty of the assessor to take into consideration every proper element and factor affecting such valuation (Schleiff v. County of Freeborn, 231 Minn. 389, 43 N. W. [2d] 265), and in determining the true and full value of real property for tax assessment purposes, the ordinary market value must control. In re Taxes of Potlach Timber Co. 160 Minn. 209, 199 N. W. 968; In re Delinquent Real Estate Taxes, Waseca County, 182 Minn. 543, 235 N. W. 22. Appurtenant easements are factors definitely affecting was made in 1926, one of the elements and factors which the assessor values. When the assessment of what is now the Nordquist property under his duty was required to take into consideration was the fact that the property was burdened with an easement which materially reduced the value of the property; and in assessing the plaintiffs' property, it was the assessor's duty to take into consideration the additional value the property had by reason of the easement appurtenant. Taking that into consideration, naturally, a higher value would be found to exist. The value of the easement influenced the valuation placed upon the dominant tenement. In 3 Cooley, Taxation (4 ed.) § 1154, the author states:

"* * * The servient estate must be assessed at its value subject to the easements and the dominant estate at its value with the easements."

An easement cannot be appurtenant to both the dominant and the servient tenement. The dominant tenement is taxed upon its

value, and the easement appurtenant enhances that value. It cannot pass upon the tax sale of the servient tenement. The servient tenement is also taxed upon its value, which the easement has diminished. Taxes assessed against the servient tenement cover the property minus the easement which has been carved out of it and which has become attached to and is appurtenant to the adjoining property.

"* * * An easement which lies upon one lot but is appurtenant to another lot is really part of the latter. It is carved out of the former. So it would appear that, when the servient lot is sold for taxes not paid upon it, the easement ought not to pass to the purchaser; the lot should pass subject to the easement, or, to express it another way, the lot less the easement should pass." Engel v. Catucci, 91 App. D. C. 54, 57, 197 F. (2d) 597, 600.

The respective tenements should be assessed accordingly. In fact oftentimes, and apparently in this instance, the increase in value of the dominant tenement by reason of the easement would be materially greater than the amount by which the value of the servient tenement was lessened. Without the easement, plaintiffs had no access to the rear of their building. The lessening of the value of the property because of the easement was taken into consideration by the assessor when he assessed the Nordquist property in 1926 if he did his duty. The record fails to show whether the assessor did or did not take into consideration the easement in making the assessment of the properties involved. It was an apparent easement and would readily have been discovered upon reasonable inspection. Public officers are presumed to have performed their official duties.

All that could be assessed against the servient tenement was the fee minus the easement which had ceased to be a part of the servient estate. That is all the state has acquired and that is all it has to sell. The property assessed and the property conveyed must be the same. If property rights which are not included in the assessment are sold or extinguished by a tax sale, that would be a taking of property without due process of law.

Restatement, Property, § 509, *comment to subsection* (2), states:

"* * * the appurtenant easement presents a situation which calls for exceptional treatment. In the case of such an easement the dominant tenement has its value for sale purposes increased by the existence of the easement. Upon a sale of the land constituting this tenement, whether the sale is for tax purposes or not, the purchaser gets the benefit of the easement. Accordingly the value of the land for sale purposes and hence for tax purposes is increased because of the existence of the easement. If a tax levied on the basis of this increased value is paid, the one paying the tax has, in effect, paid a tax on the interest in the servient tenement created by the easement. If this interest has been taxed against the owner of the dominant tenement the value represented by it ought not to be again taxed against the owner of the servient tenement. Hence a sum representing the decrease in value of the servient tenement produced by the existence of the easement ought to be subtracted from what would have been the value of that tenement if unencumbered when it is assessed for tax purposes. If it is so subtracted the title of the purchaser on the tax sale should be subject to the easement."

■ An easement is an incorporeal hereditament. It is a servitude imposed upon corporeal property, and it gives no title to the land upon which it is imposed. An easement, whether it is a right to use the surface or a space above or below it, does not carry with it title to or right of possession of the land itself. Romans v. Nadler, 217 Minn. 174, 14 N. W. (2d) 482. Nordquist contends that plaintiffs could have had this incorporeal hereditament separated from the corporeal hereditament and that the proper proportion of taxes against the property be apportioned against the easement by the county auditor under G. S. 1923, § 2394. In Winston v. Johnson, 42 Minn. 398, 404, 45 N. W. 958, 960, the same claim was made, namely, that the owner of the easement of an alleyway should have protected his interest by a payment of taxes against the alleyway. We said:

"* * * Exactly how this could have been done is not suggested. The easement is an incorporeal hereditament and not taxable. The

strip used for alley purposes seems to have been assessed with the balance of the tract described in appellant's deed and to which he held the fee, and properly so, for there was but one parcel or lot of land."

■ Nordquist relies on Hacklander v. Parker, 204 Minn. 260, 283 N. W. 406. In that case, after the tax lien had attached, Hacklander claimed she had acquired part of a lot by adverse possession. The prescription period was running after the tax lien had attached. We held that under the applicable statutes she could not acquire title to the land by adverse possession, since taxes are a perpetual lien upon the real estate against which they are assessed until paid. The result in the case is clearly correct. The same result would have been reached by saying that the sale of the land for the purpose of satisfying a tax levied upon it extinguished all prior interests in it, because the tax was levied upon the basis of the value of the land without regard to existing legal interests in it. Restatement, Property, § 509, *comment e*. An easement appurtenant, however, must be taken into account in placing a value for tax purposes on both the servient and dominant tenement. Dicta in the Hacklander case are stronger than warranted when they state that a tax title is paramount against the world and all other titles, claims, and equities, and (204 Minn. 263, 283 N. W. 408) "that the state's lien for taxes is paramount against every conceivable title, interest, and claim * * *."

The question here is: To what property did the state's lien for taxes attach? It is true that a tax lien is paramount over all other rights in the property subject to the lien. If the easement here was subject to the lien, it would follow that it would be destroyed by the sale. If the assessment and the lien did not attach to the easement, it would equally follow that the easement would not be destroyed by the sale.

■ Nordquist contends that L. 1953, c. 493, changes the law in Minnesota. This chapter amends M. S. A. 282.01, subd. 6, which provides that the conveyance from the state by a tax deed "shall have the force and effect of a patent from the state." The amend-

ment adds: "subject to easements and restrictions of record at the date of the tax judgment sale, including, but without limitation, permits for telephone, telegraph, and electric power lines either by underground cable or conduit or otherwise, sewer and water lines, highways, railroads, and pipe lines for gas, liquids, or solids in suspension."

Nordquist argues that, since the amendatory act created a change in the law, it must necessarily follow that the law of Minnesota prior to the amendment was not as expressed in the amendment and that, therefore, prior to this amendment, a tax title was not subject to easements and restrictions of record and, necessarily, also easements by prescription.

It does not follow that prior to the amendment the patent from the state in a tax forfeiture proceeding did cut off all easements, recorded or otherwise. This court has not so held, and the original statute does not so state. During the past few years, thousands of miles of electric power lines have been constructed in this state under the so-called R. E. A. Many of these are found in sparsely settled areas where lands are of small value, some of them submarginal. Also pipe lines carrying oil from the Alberta fields have recently been built crossing similar areas. Circumstances surrounding the enactment of an amendment may be and should be considered in determining whether a change in the law was intended. The history of the act would show that the situation above described prompted the enactment, not for the purpose of changing the law but merely to declare what the law is so that there can be no question or confusion about it.

■ Nordquist contends that, even if recorded easements do survive a tax title, an unrecorded easement does not. We see no reason for the distinction. An easement by prescription increases the value of the dominant tenement to the same extent as a recorded easement and, likewise, decreases the value of the servient tenement. The arguments which support survival of a recorded easement from a tax deed are equally weighty and pertinent when considering the survival of an easement by prescription. We see no reason for a difference in treatment.

In our opinion a valid tax deed executed by the state of Minnesota, as grantor, does not extinguish an unrecorded easement for a roadway across the property described in the tax deed, which easement was acquired by prescription prior to the tax assessment for which the property was forfeited to the state.

Judgment affirmed.

