## SUPERVISOR OF ASSESSMENTS OF ANNE ARUNDEL COUNTY *v.* BAY RIDGE PROPERTIES, INC.

[No. 72, September Term, 1973.]

*Decided November 7, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*K. Donald Proctor, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *E. Stephen Derby, Assistant Attorney General,* on the brief, for appellant.

*John A. Blondell* for appellee.

SINGLEY, J., delivered the opinion of the Court.

This is an appeal from an order of the Maryland Tax Court which abated and cancelled an assessment of $57,075.00, being approximately 60% of full cash value of $95,128.00, for State and Anne Arundel County tax purposes for the tax year 1972-73 imposed by the County's Supervisor of Assessments (the Supervisor) on 10.681 acres of land owned by Bay Ridge Properties, Inc. (Properties).[1]

---

[1] The order also had the practical effect of rejecting a proposed levy for three years' back taxes, 1971-72, 1970-71, and 1969-70, predicated on the idea that the 10.681-acre tract was "escaped" property, an assessment permitted by Maryland Code (1957, 1969 Repl. Vol.) Art. 81, § 34.

Since 1968 Properties has been the owner and developer of Bay Ridge, a residential subdivision fronting on Severn River and Chesapeake Bay at the point where the River enters the Bay. In 1922, Bay Ridge Realty Corporation, a predecessor of Properties, acquired a 380-acre tract there, and later filed among the Land Records of Anne Arundel County four subdivision plats of the development, ultimately dividing the tract into some 1100 building lots, most of which are only 50 feet in width. As lots were sold, commencing in 1922, the conveyances of lots were made not by description, but by reference to the plats. A brief history of the development of Bay Ridge may be found in *Simon Distrib. Corp. v. Bay Ridge Civic Ass'n,* 207 Md. 472, 114 A. 2d 829 (1955).

The subdivision plats clearly showed a roadway 50 feet in width which ran along the entire water front of the tract, at distances varying from some 50 to some 200 feet from the water. The area between the road and the water was in some places a beach at water level, in others a bluff as high as 12 feet overlooking the Bay. As lots were sold by the developer and its successors in title, some purchasers received deeds containing a specific grant of the right to use the strips between the road and the water for bathing, boating and fishing. In some instances, the developer covenanted, on its part, not to erect, or permit the erection of, dwellings, bathhouses or commercial buildings on the beaches and bluffs, but to allow the construction of boardwalks, observation pavilions and piers.

As a consequence, while bare legal title to the strips remained in Properties' predecessors, and later in Properties,[2] for reasons later to be discussed, use of the area was restricted to owners of the lots, and Properties was precluded from making any disposition or gainful use of the area.

Relying on the fact that title to 380 of the 1100 lots at Bay Ridge was still held by Properties,[3] Anne Arundel County's Supervisor of Assessments, assuming that the beach area

---

**2.** This seems to have been stipulated for purposes of the case, although it is possible that Properties has only an equitable title.

**3.** There is some indication that only 370 lots remain unsold.

comprised 18.41 acres, assessed it at $98,380.00 for the tax year 1972-73. Properties protested, with the result that the area was recalculated at 16.294 acres, and the assessment was reduced to $87,070.00. A corresponding reduction was made for the tax year 1971-72. On appeal to the Appeal Tax Court of Anne Arundel County, this assessment was affirmed, and the Supervisor was instructed to assess the 16.294 acres as escaped property for the 1971-72, 1970-71 and 1969-70 tax years.

Properties then appealed to the Maryland Tax Court. There, the Supervisor accepted a new survey made for Properties, and reduced the area to 10.681 acres and the assessment to $57,075.00.[4] The Tax Court concluded that the beach area should not have been separately assessed, because its use was reserved exclusively to the lot owners, and that whatever value it may have had should have been reflected in the assessed value of the lots at Bay Ridge. In this appeal, the Supervisor of Assessments has challenged the result reached by the Tax Court with an argument which we find superficially persuasive, but entirely at variance with the realities of the situation.

The Supervisor argues that in the usual case, the existence of an easement may diminish the value of the servient estate, *Macht v. Department of Assessments*, 266 Md. 602, 614, 296 A. 2d 162, 169 (1972),[5] and cases and authorities there cited. He progresses from this point to the contention that since 730 lots have been sold, there are 730 dominant estates, but that since 380 lots remain unsold, with easements for the use of the beach yet to be granted, a proportionate part of the assessed value must be attributed to the ownership which Properties holds and the correlative right to grant easements which Properties retains, with the consequence that there remains at least 380/1100 of

---

**4.** The uncertainty as to precise acreage seems to have been the result of substantial erosion which has occurred since the plats were first recorded.

**5.** It should be noted, however, that *Macht* itself was the unusual case. There the practical effect of the easement was to enhance the value of the servient estate, Macht v. Department of Assessments, 266 Md. 602, 615, 296 A. 2d 162, 169 (1972).

assessable value, on which annual taxes should be paid by Properties. This argument is based on the notion that the easement does not become appurtenant to the unsold lots until they are conveyed to others.

The logic of such an argument is facially unassailable, but it overlooks two important principles. The first results from the recording of the subdivision plats. Judge Barnes, speaking for the Court in *Steuart Transp. Co. v. Ashe*, 269 Md. 74, 87-96, 304 A. 2d 788, 796-801 (1973), carefully reviewed the decisions setting forth the rights which flow from the law applicable to uniform general plans of development of land and the enforcement of restrictions on the use of land, subject to a uniform general plan. In sum, our cases hold that whether a uniform general scheme or plan of development is intended is a question of fact, *Scholtes v. McColgan*, 184 Md. 480, 489, 41 A. 2d 479, 483 (1945); that if such a scheme or plan is intended, restrictive covenants may be enforced in equity, *McKenrick v. Savings Bank of Baltimore*, 174 Md. 118, 128, 197 A. 580, 584-85 (1938); and that enforcement may be had by or against a grantee even though the restriction does not appear in his chain of title if it is a matter of public record, *Gnau v. Kinlein*, 217 Md. 43, 141 A. 2d 492 (1958). *See generally Turner v. Brocato*, 206 Md. 336, 111 A. 2d 855 (1955). *Cf. Klein v. Dove*, 205 Md. 285, 291-96, 107 A. 2d 82, 85-87 (1954).

Winson G. Gott, Jr., Esq., an expert witness for Properties, had prepared a report summarizing the results of his examination of the conveyances made by Properties' predecessors. The following is an excerpt from his report, introduced in evidence:

"Many of the deeds from Bay Ridge Realty [the original developer] contained the following: 'also together with the use of a beach 100 feet wide from low water mark running along and binding upon the Severn River or Chesapeake Bay from a line drawn northeasterly in extension of the southernmost line of Bagley's Path, as shown on a Plat of Bay Ridge, and extending in a northerly

direction along the Severn River or Cheaspeake Bay to a line northeasterly in extension of the southeastmost line of lot No. 9 in Section 3 as shown on the Plat of Bay Ridge', followed by this language 'neither the said beach nor the said streets or avenues are intended to be dedicated to public use, the fee simple title to the same hereby being reserved in the party of the first part, the mention of the same herein being for the purpose of description only, expressly reserving, however, to the party of the first part and its successors in the development of Bay Ridge the right to erect or permit to be erected any board walk, pier or boat house, also any pavilion or bath houses upon the aforesaid Beach for the use and privilege of the property owners of Bay Ridge'.

"Some of the deeds contained the following: 'The owner of this lot and his family shall have access and right of way to the Bay or Lakes at the nearest street end or right of way, for bathing, boating, fishing, etc[.] but no right to build piers, boat shelters or other buildings on the beach or in the water without written permission from the Company.'

\* \* \*

"Many of the deeds conveying bay front lots contained the following language: 'And the said Grantor hereby covenants that it will not erect nor suffer to be erected any dwelling, bathhouse or building for commercial purposes, except a pier, observation pavilion or boardwalk or any or all of them on the strip of ground of the Grantor herein lying between the Bay Drive and the high water mark of the Chesapeake Bay opposite the property conveyed. This covenant shall run with the land in favor of the lot hereby conveyed and be binding on all subsequent owners and occupants of said strip of ground.' Some of the deeds did not make any reference to beach rights."

As a result, we cannot agree with the notion that the easements remained in a state of suspended animation as regards the unsold lots, waiting to be activated by either the sale of the lots or by the execution and delivery of deeds of conveyance. It seems to us that by implication easements were intended to attach to the unsold lots as soon as the plats were recorded and the first lot was sold, because from that time on, there was no longer a unilateral option available to the developer to grant or withhold the easements. *See Mullan v. Hochman*, 157 Md. 213, 220-21, 145 A. 554, 557 (1929), where a similar rule was applied to the dedication of streets by the recording of a subdivision plat, subject only to acceptance by a municipality, a condition not here applicable; *see also Atlantic Constr. Corp. v. Shadburn*, 216 Md. 44, 139 A. 2d 339 (1958).

The Supervisor's argument overlooks a second very significant fact. The combination of the grant of easements for the recreational use of the beach and the imposition of restrictions against disposition and improvements deprived the beach, as the servient estate, of whatever value it might otherwise have had.[6] What value it had became exclusively and permanently attached to the lots, sold or unsold, improved or unimproved. For a period of nearly 50 years, the beach has had no independent value of its own — a circumstance tacitly recognized by the County until it first attempted to put the beach on the tax rolls. Long-standing administrative practice was given weight in *Macke Co. v. State Dep't of Assessments & Taxation*, 264 Md. 121, 135, 285 A. 2d 593, 600 (1972). It seems to us that the situation can be analogized to that of a landowner whose deed calls for a boundary at the center line of a public highway. Obviously, that part of his land which lies in the bed of the highway is without value, and forms no part of his assessment for tax purposes. However, the value of his remaining property is enhanced by its location on the highway, and by the possibility that the right to use the street bed may revert to

---

6. There was testimony that the only improvements consisted of two piers on the Bay front, which were assessed to owners of adjacent properties.

him should the highway be abandoned, and is accordingly reflected in his assessable basis.

The easements involved here may be classified generally as easements appurtenant.[7] "Appurtenant easements are factors definitely affecting values," *Alvin v. Johnson*, 241 Minn. 257, 262, 63 N.W.2d 22, 25 (1954), and "[i]f easements are appurtenant to the realty they are taxed [assessed ?] as a part of the land to which they belong,"[8] 1 Cooley, Law of Taxation 740 (3d ed. 1903). The easement rights in the beach, held by the owners of lots in the subdivision, enhance the values of the lots themselves, and such enhancement is directly reflected in the assessments of those properties. *See generally* Restatement of Property § 509, comment *d* at 3101-02 (1944); 2 American Law of Property § 8.104 (A. J. Casner ed. 1952); *Alvin v. Johnson, supra*, 241 Minn. at 262-63, 63 N.W.2d at 26; *Gowen v. Swain*, 90 N. H. 383, 387, 10 A. 2d 249, 252 (1939); *Tax Lien Co. v. Schultze*, 213 N. Y. 9, 11, 106 N. E. 751, 752 (1914), *rehearing denied*, 213 N. Y. 700, 108 N. E. 1109 (1915); *Knickerbocker Village, Inc. v. Boyland*, 16 App. Div. 2d 223, 227, 226 N.Y.S.2d 982, 986 (1st Dep't 1962), *aff'd*, 12 N.Y.2d 1044, 190 N.E.2d 239, 239 N.Y.S.2d 878 (1963); *Jackson v. Smith*, 153 App. Div. 724, 725, 138 N.Y.S. 654, 655 (1st Dep't 1912), *aff'd*, 213 N. Y. 630, 107 N. E. 1079 (1914); *People v. Purdy*, 143 App. Div. 389, 394, 128 N.Y.S. 569, 573 (1st Dep't), *aff'd*, 202 N. Y. 550, 95 N. E. 1137 (1911). *See also* Annot., 108 A. L. R. 829 (1937); *Union Falls Power Co. v. Marinette County*, 238 Wis. 134, 141, 298 N. W. 598, 601 (1941) (flowage rights); *Crocker-McElwain Co. v. Assessors of Holyoke*, 296 Mass. 338, 347-48, 5 N.E.2d 558, 563 (1937) (water power rights); *Central Maine Power Co. v. Town of Turner*, 128 Me. 486, 491, 148 A. 799, 801 (1930) (mill privileges); *Kensington Hills*

---

**7.** "An easement is appurtenant to land when the easement is created to benefit and does benefit the possessor of the land in his use of the land," Restatement of Property § 453 (1944). *See also* 2 American Law of Property § 8.6 (A. J. Casner ed. 1952). *Cf.* Thruston v. Minke, 32 Md. 487 (1870).

**8.** The corresponding language in 3 Cooley, The Law of Taxation § 1154, at 2321 (4th ed. 1924), makes it clear that "taxed" should be read "assessed": "The servient estate must be assessed at its value subject to the easements and the dominant estate at its value with the easements."

*Dev. Co. v. Milford Township,* 10 Mich. App. 368, 372, 159 N.W.2d 330, 332 (1968) (effect of zoning restrictions).

It seems to us that Maurice C. Ogle, who testified as Properties' expert real estate appraiser, had it about right when, in reply to a question from Judge Hughes of the Tax Court, he said:

> "My contention would be . . . this, gentlemen, that when you view a beach area such as this that has been designated by Anne Arundel County as open space which precludes any particular use of the property[9]—that is its zoning status—actually the value of that is reflected in the lots. It is not the beach itself that has value, it is the lots that lie behind the beach that have the value; and this is shown in the price that the lots sell for and it is consequently shown in the assessed value of those lots. But the beach itself has no fair market value. I can tell you from my own experience in developing waterfront property that the happiest day of your life is — for the developer — is the day that he can give that to the community."

Mr. Ogle, responding to an inquiry by Judge Logan, continued:

> "I would contend that . . . there was no fair market value in this particular piece of ground. I would contend, sir, that to tax this piece of land results in a double taxation. First of all, the fact that the inland lots here have privileges of going to a beach or can be given the privilege of going to a beach makes them sell at this higher price."

As a consequence, while we need not reach the Supervisor's second argument, that the beach was escaped property, because of our conclusion that the beach, under the circumstances of this case, could never have been separately assessed, once the plan of development was

---

[9.] There was a suggestion that this had occurred about six months prior to the hearing.

activated, it seems quite clear to us that the administrative determination followed for nearly a half-century was correct: the beach could not be assessed as such because its value, consciously or unconsciously, was reflected in the assessed value of the lots to which it had become appended. "[There exists] a judicial willingness to presume that the easement's value was included in the assessment of the dominant estate in the absence of evidence to the contrary," 3 Powell, Real Property ¶ 426, at 526.58-.59 (1970). *See Engel v. Catucci*, 197 F. 2d 597, 600 (D.C. Cir. 1952); *Hayes v. Gibbs*, 110 Utah 54, 64, 169 P. 2d 781, 786 (1946); *Gowen v. Swain, supra*, 90 N. H. at 387, 10 A. 2d at 252; *Alamogordo Improvement Co. v. Prendergast*, 43 N. M. 245, 252, 91 P. 2d 428, 432 (1939); *Ehren Realty Co. v. Magna Charta Bldg. & Loan Ass'n*, 120 N. J. Eq. 136, 138, 184 A. 203-04 (1936); *Smith v. Smith*, 21 Cal. App. 378, 380, 131 P. 890, 891 (1913).

The Supervisor makes much of the fact that the Tax Court departed from what he regards as the statutory mandate contained in Code (1957, 1969 Repl. Vol.) Art. 81, § 8 (1), that real estate be assessed to the owner, when it directed that the value of the easement, which is simply an interest in real property, be reflected in the amount for which the lots are assessed. We do not see it quite that way, however. Years ago, an easement in gross held by a public utility was made the subject of a separate assessment, *Consolidated Gas Co. v. Baltimore City*, 105 Md. 43, 65 A. 628 (1907); *Appeal Tax Court v. Western Maryland R.R.*, 50 Md. 274, 301-02 (1879).[10] It is of more than passing interest to note that Code (1957, 1969 Repl. Vol.) Art. 81, § 4 (c), provides that a person in possession or control of real or personal property may be treated as the owner for purposes of taxation. *See Meade Heights v. Tax Comm'n*, 202 Md. 20, 95 A. 2d 280 (1953), upholding a tax levied on a lessee's interest in real property.

It is by no means unusual for the value of property to be increased by reason of the existence of an appurtenant easement, *see Kendrick v. Twin Lakes Reservoir Co.*, 58

---

**10.** This is not intended to imply that the existence of an easement in gross should be considered when determining the value of the *servient* tenement for assessment purposes. *See* Restatement of Property § 509, comment *c* at 3101 (1944).

Colo. 281, 287-88, 144 P. 884, 885-86 (1914) (reservoir rights in another county). Although in the usual case, the value of an easement will not exceed the value of the servient estate, *Consolidated Gas Co. v. Baltimore City, supra,* there may be situations quite different from that in this case where the servient estate loses all practical economic value, while the dominant estate is disproportionately enhanced: as for example, when a multistoried building, without the payment of consideration, acquires an easement for unobstructed light and air from the owner of a small unimproved adjacent lot. *Compare Macht v. Department of Assessments, supra,* 266 Md. at 614, 296 A. 2d at 169.

*Order affirmed, costs to be paid by appellant.*