[No. 43674.    En Banc.    April 15, 1976.]

Twin Lakes Golf and Country Club, *Respondent*, v. King County, *Appellant*.

*Christopher T. Bayley, Prosecuting Attorney*, and *Dennis E. Kenny* and *Raymond B. Ferguson, Deputies*, for appellant.

*Bogle & Gates* and *John T. Piper*, for respondent.

This opinion was prepared by the late Justice Robert C. Finley. It is adopted by the undersigned Justices as the opinion of this Court.

This is an appeal from a decision of the King County Superior Court declaring that the plaintiff-respondent's golf course has no taxable "fair market value" and that certain real property taxes assessed against the golf course and collected under protest by the county must be refunded to the taxpayer.

The dispositive issue is whether the golf course has a "fair market value" for tax assessment purposes. The property is encumbered with both zoning and conveyancing restrictions regarding use and nonalienation of the realty, and has a history of operating at a substantial, apparently unavoidable, financial loss every year.

On January 1, 1972, the King County Assessor made an assessment regarding the 18-hole golf course owned by Twin Lakes Golf and Country Club for the 1973 tax year. He determined that the golf course had a value of $660,600. The King County Treasurer levied taxes on the golf course in the sum of $16,387.10. The Country Club paid the taxes under protest pursuant to RCW 84.68.020, then unsuccessfully appealed the assessment first to the King County Board of Equalization and then to the State Board of Tax Appeals.

The golf course was constructed and essentially has been operated as an integral part of the Twin Lakes Development, a residential community located in the Federal Way area in South King County. The development is composed of five subdivisions which contain 1,006 single-family residential lots, 289 of which are adjacent to the golf course. The realty, i.e., the golf course, subject to the assessment involves no buildings or structures. It includes an irrigation system but otherwise consists solely of fairways, greens, and sand traps and is surrounded by homes in the development.

Four of the subdivisions, together with the golf course, were developed and constructed as a planned unit development (PUD) pursuant to the King County zoning code. To obtain PUD zoning, the developer was required to set aside and reserve certain lands for "common open space" as re-

quired by the King County zoning code.[1] The King County Council approved the developer's request and zoned four of the subdivisions, including the golf course, as a PUD. The ordinances adopted by the county required the developer to construct a golf course on the realty and to reserve it for common open space and golf course use for the benefit of the lot owners in the development.

The developer, prior to conveying the lots, filed with the King County Auditor a declaration of covenants, conditions, and restrictions which provided that each lot owner would have the right to use and enjoy the golf course. The covenants provided that the restrictions were to run with and bind the land for a period of 20 years and automatically were renewed for 10-year periods unless 75 percent of the lot owners terminated the covenants. The deeds given by the developer to lot purchasers referred to the covenants and with each deed purchasers of a lot acquired the right to become a member of the golf club and to use the golf course. The deeds also referenced certain plat maps. The plat maps were recorded by the developer for all five subdivisions and indicated that the property would remain "open space" land free of buildings and other structures.

The Twin Lakes Golf and Country Club was incorporated in 1966 and since then consistently has incurred losses from the operation of the clubhouse, the golf course, and other club facilities. Primarily as a result of the club's lack of income and because of a lack of data on comparable sales of golf courses, the assessor computed and determined the value of the realty by the cost approach, *i.e.*, cost of reproduction, appraisal method. This method is used by the assessor in valuing all other golf courses in King County, Washington. In computing the value of the golf course, the assessor made no reduction in valuation relative to the restrictions upon the use of the realty created by PUD zoning or the protective covenants or by the recorded plat maps. In the assessor's opinion, these restrictions did not affect the value of the realty.

[1]King County Code, ch. 21.56.

The trial court found and concluded: (1) These restrictions encumbered the property and made the realty a servient estate for the benefit and use of all lots in the development and substantially and adversely affected the value of the golf course. (2) The Country Club cannot alter the present recreational use of the open space. (3) The club consistently has incurred losses from the operation of the golf course, ranging from $22,331 to $44,734 per year. (4) The use of the property as a golf course has been unprofitable and will continue to produce losses. Finally, the trial court concluded that, as of January 1, 1972, the golf course had no "fair market value" for purposes of the assessment of county real-estate taxes.

RCW 84.40.030 establishes the standard of valuation. It provides, in part:

> All property shall be valued at . . . its true and fair value in money and assessed on the same basis unless specifically provided otherwise by law.

■ The words "true and fair value in money" have consistently been interpreted by our courts to mean "fair market value." *Bitney v. Morgan*, 84 Wn.2d 9, 14, 523 P.2d 929 (1974). "Market value means the amount of money which a purchaser willing, but not obliged, to buy would pay an owner willing, but not obligated, to sell, taking into consideration all uses to which the property is adapted and might in reason be applied." *Mason County Overtaxed, Inc. v. Mason County*, 62 Wn.2d 677, 683-84, 384 P.2d 352 (1963). The market value of reality is to be measured by considering benefits to be garnered from the use of the property and the burdens placed upon it. Burdens are restrictions which may arise from zoning ordinances or other legal limitations on the use of land. *See Pier 67, Inc. v. King County*, 78 Wn.2d 48, 57, 469 P.2d 902 (1970).

■ In *Tualatin Dev. Co. v. Department of Revenue*, 256 Ore. 323, 473 P.2d 660 (1970), the court concluded that a golf course in a planned adult residential community had no market value for tax purposes. The court reached this result because the use of the land as a golf course had been

unprofitable and would continue to be so, zoning restrictions required the property to be maintained as open space, and lots were advertised and sold with reference to the inclusion of the golf course in the development plan. Although King County argues otherwise, we find no significant distinction between the instant case and *Tualatin*. When the use of land is so restricted that its ownership is of no benefit or value, the assessment for tax purposes should be nothing. *Tualatin Dev. Co. v. Department of Revenue, supra* at 329; *see Supervisor of Assessments v. Bay Ridge Properties, Inc.,* 270 Md. 216, 310 A.2d 773 (1973); *Crane-Berkley Corp. v. Lavis,* 238 App. Div. 124, 263 N.Y.S. 556 (1933).

■ An assessment may be set aside if the assessor, by failing to take into account the restrictions on the use of the property and its lack of past and potential profitability, so grossly overvalues the property as to result potentially in a constructive fraud upon its owner. *See Boise Cascade Corp. v. Pierce County,* 84 Wn.2d 667, 672, 529 P.2d 9 (1974); *Pier 67, Inc. v. King County, supra* at 58.

We are persuaded that the trial court properly concluded (1) that the golf course had no fair market value as of January 1, 1972, and (2) that the taxes in question should be refunded.

The judgment of the trial court should be affirmed. It is so ordered.

STAFFORD, C.J., and ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, BRACHTENBACH, and HOROWITZ, JJ.