782 P.2d 1170

**RECREATION CENTERS OF SUN CITY, INC., a nonprofit corporation, Plaintiff–Appellee,**

v.

**MARICOPA COUNTY, a body politic, and the Arizona Department of Revenue, Defendants–Appellants.**

**No. 1 CA–CIV 8248.**

Court of Appeals of Arizona, Div. 1, Department D.

Nov. 18, 1986.

Review Granted April 15, 1987.

Evans, Kitchel & Jenckes, P.C. by James R. Hienton and David J. Ouimette, Phoenix, for plaintiff-appellee.

Robert K. Corbin, Atty. Gen. by Anthony B. Ching, Sol. Gen., and Robert A. Zumoff, Asst. Atty. Gen., Phoenix, for defendants-appellants.

## OPINION

FROEB, Chief Judge.

The six parcels of land and their improvements which are the subject of this decision comprise community recreation facilities owned and operated by a nonprofit corporation in Sun City, Arizona. The question is whether the trial court correctly found that the valuation of the property by the Arizona Department of Revenue (Revenue) was excessive.

The property is owned by Recreation Centers of Sun City, Inc. (Recreation Centers), which operates recreation complexes consisting generally of swimming pools, social and meeting halls, auditoriums, craft rooms and other facilities. The corporation also owns and maintains golf courses and a facility for bowling.

Recreation Centers received the parcels of land by deed from Del E. Webb Development Company. The facilities were constructed at no cost to Recreation Centers by Del E. Webb Development Company and transferred under an agreement which provided that Recreation Centers would operate the facilities. Del E. Webb Development Company sold nearby residential property to homeowners and devoted a portion of the selling price of each unit to the cost of constructing the recreation facilities.

The deed to Recreation Centers contained restrictions limiting the use of the property to recreation purposes for the benefit of Sun City residential property owners. The deed restrictions further provide that the recreation facilities must be operated "without pecuniary gain or profit." The lot owners in Sun City have the right to enforce the restrictions set forth in the deed.

Upon the purchase of a home in Sun City, the signing of a facilities agreement and the payment of an annual membership assessment, the purchaser becomes a member of the recreation center. As such, the member is entitled to use all of the recreation facilities in accordance with posted rules and regulations. Recreation Centers' articles of incorporation and bylaws govern its operation and the rights and obligations of its members.

This appeal by Revenue arises from two superior court appeals taken from decisions of the Board of Tax Appeals. The superior court appeals were filed by Recreation Centers challenging tax assessments for the years 1981 and 1982. Several legal bases for the claim of overevaluation were presented to the trial court but were dismissed by stipulation. The resulting in-

quiry in the trial court and on appeal relates to how the use restrictions set forth in the deed affect the valuation of the property for tax purposes and the sufficiency of the evidence concerning the valuation of the property. Recreation Centers took the position in the trial court that either the property had no value for tax purposes or that Revenue's valuation was correct. The trial court ruled in favor of Recreation Centers and found no value.

In an earlier appeal to this court by Recreation Centers concerning 1980 taxes, this court held that Recreation Centers failed to meet its burden of proving that the property had no value and did not overcome the presumption of validity of the assessor's valuation. *Recreation Centers of Sun City, Inc. v. Maricopa County*, 1 CA–CIV 6476 (Memorandum Decision filed November 25, 1983). Recreation Centers has overcome the presumption in this case by its proof.

On the present appeal to this court, Revenue contends that the trial court erred in concluding that Revenue's valuation of the property was excessive. As we discuss later, the only proof of value presented to the trial court consisted of the testimony of two witnesses offered by Recreation Centers. The witnesses testified that the property had no value because no one would buy it in view of the use restrictions in the deed. The specific issue underlying Revenue's argument is that the presence of deed restrictions upon the property cannot, as a matter of law, decrease its value for tax purposes.

For Arizona property tax purposes, property must be assessed at its "full cash value." "Full cash value" is synonymous with "market value." *See, e.g., Caldwell v. Department of Revenue*, 122 Ariz. 519, 596 P.2d 45 (App.1979). "Market value" is defined as "the highest price estimated in terms of money which the property will bring if exposed to sale on the open market allowing a reasonable time to find a purchaser who buys with knowledge of all the uses to which it is adopted and *for which it is capable of being used." Department of Revenue v. Transamerica Title Insurance*

*Co.*, 117 Ariz. 26, 28, 570 P.2d 797, 800 (App.1977) (emphasis added). In *Department of Revenue v. Transamerica Title Insurance Co.*, this court defined market value in terms of a purchaser who buys with knowledge of all the uses "for which [the property] is capable of being used." 117 Ariz. at 28, 570 P.2d at 799. Further, the value of the property for property tax purposes must reflect the realities of the market place. *Department of Revenue v. Transamerica Title Insurance Co.* The value of the property may not rest on mere abstract fiction, such as the nonexistence of the deed restrictions.

"Market value" is a value estimate "derived annually by the use of standard appraisal methods and techniques or as provided by law." A.R.S. § 42–201(4). *See, e.g., Caldwell v. Department of Revenue*, 122 Ariz. 519, 596 P.2d 45 (App.1979). The standard appraisal method employed by Revenue in valuing Recreation Centers' property was the market data approach. However, in valuing the property under the market data approach, Revenue specifically did not take into account the use restrictions set forth in the deed.

The superior court has broad *de novo* authority to review tax valuations. Once the superior court concludes, based on evidence of evaluation derived from standard appraisal methods and techniques, that the statutory presumption of the correctness of the taxing authority valuation has been overcome and that the valuation is excessive, it may determine a new cash value for the property. *Inspiration Consolidated Copper v. Arizona Department of Revenue*, 147 Ariz. 216, 709 P.2d 573 (App. 1985).

In the present case, the superior court found that the statutory presumption of correctness was overcome and that the taxing authority's valuation was excessive. The statutory presumption of correctness disappears if competent valuation evidence is presented by the taxpayer. *Inspiration Consolidated Copper v. Arizona Department of Revenue.*

Recreation Centers met its burden of presenting competent evidence to rebut the

presumption. At trial, Recreation Centers presented the testimony of two expert witnesses, Roger Blakey and Lawrence Howorth. Both gave the opinion that the property had no market value because of the use restrictions in the deed. Howorth pointed out that the property had no market value because it could not be sold. Unlike Revenue, Recreation Centers' witnesses took into consideration the effect of the deed restrictions on the market value of the property.

Revenue contends the trial court erred in determining that the property had no value. Its argument is not based on an incorrect method of appraisal. It contends that the deed restriction should not be considered in determining full cash value. It objects to measuring a nonprofit corporation's property against a standard which would be used for a profit-making enterprise. Revenue argues that the deed restriction upon the property represents the voluntary choice of the original owners and it compares the deed restriction to other encumbrances placed voluntarily upon the property, such as leases and mortgages. Revenue refers us to *Steinfeld v. State*, 37 Ariz. 389, 294 P. 834 (1930); *Magna Investment & Development Corp. v. Pima County*, 128 Ariz. 291, 625 P.2d 354 (App. 1981); *Caldwell v. Department of Revenue*, 122 Ariz. 519, 596 P.2d 45 (App.1979); and *County of Yuma v. Tongeland*, 15 Ariz.App. 237, 488 P.2d 51 (1971) for authority that voluntary encumbrances will not reduce the valuation of a property for tax purposes.

Recreation Centers argues that there are distinctions between the deed restriction involved here and encumbrances such as leases and mortgages. It argues that the restriction here is more like a permanent easement upon property and is therefore properly considered when valuing the property.

▆ The value of the property in the marketplace determines the tax. Value is reached through an inquiry into many factors and must often involves an attention to expert opinion. Any encumbrance upon title has the potential of affecting market value. A lease may do so, and thereby affect value to the owner. *Steinfeld v. State*, 37 Ariz. 389, 294 P. 834 (1930). The same could be true of a mortgage. Nevertheless, courts in Arizona have decided that *for purposes of taxing real property*, leases and mortgages will not be considered in determining market value. *See Steinfeld v. State*, 37 Ariz. 389, 294 P. 834 (1930); *Magna Investment & Development Corp. v. Pima County*, 128 Ariz. 291, 625 P.2d 354 (App.1981); *Caldwell v. Department of Revenue*, 122 Ariz. 519, 596 P.2d 45 (App.1979). We perceive a pragmatic reason for this rule which has nothing to do with whether it was the owner's voluntary action that affected the value. If the assessor were required to consider leases and mortgages in his calculations, the difficult business of fixing value would be rendered even more complex. In the case of leases, the lessor and lessee may allcoate the payment of a tax among themselves, and in the case of mortgages, such may be extinguished at anytime. A rule that obviates the need for the assessor to investigate these factors has some practical merit. In any event, the rule that mortgages and leases cannot be considered is clear.

We are aware of nothing which would require us to apply the same rule to a deed restriction recorded against real property and we decline to do so. The deed restriction in this case permanently encumbers the title to the property and severely restricts its use. In addition, it benefits surrounding real property whose owners may enforce its terms. As pointed out by witness Howarth, the taxable value of the property owned by Recreation Centers flows through to the individual residential properties in Sun City whose owners have rights to its use. In other words, the value of the property of such owners is increased by reason of the existence of the Recreation Centers, offsetting the loss of taxable value represented by the centers themselves. While this may not be determative, it is mentioned as a factor in some cases. *See Arizona R.C.I.A. Lands, Inc. v. Ainsworth*, 21 Ariz.App. 38, 515 P.2d 335 (1973).

There is considerable support in other jurisdictions for the view that deed restrictions may decrease the value of real property for tax purposes. *See, e.g., Mashpee Wampanoag Indian Tribal Council, Inc. v. Assessors of Mashpee,* 379 Mass. 420, 398 N.E.2d 724 (1980); *Twin Lakes Golf and Country Club v. King County,* 87 Wash.2d 1, 548 P.2d 538 (1976); *Kensington Hills Development Co. v. Milford,* 10 Mich.App. 368, 159 N.W.2d 330 (1968); *Neptune v. Shark River Hills Beach Corp.,* 86 N.J.Super. 492, 207 A.2d 330 (1965); *Englewood Cliffs v. Estate of Allison,* 69 N.J.Super. 514, 174 A.2d 631 (1961).

A similar case is *Twin Lakes Golf and Country Club v. King County,* 87 Wash.2d 1, 548 P.2d 538 (1976). At issue was the taxable value of a golf course constructed and operated as a part of a residential subdivision development. Pursuant to zoning requirements that certain "open space" be set aside, the developer had recorded covenants restricting the use of the property to a golf course and the deeds of individual lot owners gave them rights to join the golf club and use the course. The Washington Supreme Court affirmed the trial court's factual finding that the golf course had no "fair market value" for tax purposes. In sum, the court held that it was proper to take into account the restrictions on the use of the property for tax purposes.

A deed restriction is not unlike a recorded easement for purposes of tax valuation. This court has approved the concept that the value of the servient estate against which there is a recorded easement is properly reduced and the value of the dominant estate is properly increased, depending upon the evidence. *Arizona R.C.I.A. Lands, Inc. v. Ainsworth.*

In summary, we hold that the trial court did not err in considering the effect upon valuation brought about by the deed restriction. In this case, the evidence was uncontradicted that when the deed restriction is considered, the property has no value for tax purposes. The court correctly applied the test of full cash value to measure the taxable value at issue. As we have pointed out, full cash value is equated to market value. As this case demonstrates, if no one would buy the property, it has no market value and therefore no value for tax purposes.

For the foregoing reasons, we affirm the superior court decision.

GRANT, P.J., and KLEINSCHMIDT, J., concur.